IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

THE LANE CONSTRUCTION CORPORATION,

Plaintiff,

v. Case No. 26-2211-JWB

FIVE STAR TRUCKING, LLC,

Defendant.

**MEMORANDUM AND ORDER**

This matter is before the court on Defendant's motion to dismiss. (Doc. 10.) The motion is briefed and ripe for decision. (Docs. 15, 18.) For the reasons stated herein, the motion is GRANTED IN PART and DENIED IN PART.

## I. Facts

The following facts are taken from Plaintiff's first amended complaint. (Doc. 26.)[1] The Lane Construction Corporation ("Plaintiff" or "Lane") served as the general contractor for the Levees-Argentine/Armourdale project (the "levee project") near Kansas City, Kansas. (*Id.* ¶ 15.)

[1] Plaintiff sought leave to amend its complaint, and the magistrate judge granted the unopposed motion. (Doc. 24.) Ordinarily, an amended complaint supersedes the original, and a court may therefore deny a pending motion to dismiss as moot. *See Fullerton v. Maynard*, 943 F.2d 57, 1991 WL 166400, at *2 (10th Cir. Aug. 29, 1991). But it need not do so and, instead, can rule on the motion in light of the amended pleading. *See Raskin ex rel. JD v. Dallas Indep. Sch. Dist.*, 69 F.4th 280, 282 n.1 (5th Cir. 2023) (explaining that the "district court acted within its discretion by ruling on the pending motion" after plaintiff filed an amended complaint); *Pettaway v. Nat'l Recovery Sols., LLC*, 955 F.3d 299, 303–04 (2d Cir. 2020) ("[W]hen a plaintiff properly amends her complaint after a defendant has filed a motion to dismiss that is still pending, the district court has the option of either denying the pending motion as moot or evaluating the motion in light of the facts alleged in the amended complaint."); *Pet Food Inst. v. Grisham*, No. 21-CV-48, 2021 WL 1317990, at *1 (D.N.M. Apr. 8, 2021) ("Although the Tenth Circuit appears not to have addressed this issue, other circuit courts have held that, after the filing of an amended complaint, the district court *may* deny as moot the motion to dismiss the original complaint." (emphasis added)). Here, the redline of the amended complaint (Doc. 23-2) reflects only that the underlying lawsuit has settled. It adds no party, no new legal theory, and no new claim, and it has no bearing on the pending motion or the briefing. In the interest of efficiency and judicial economy, and in the exercise of its inherent authority to manage its docket, the court finds it proper to rule on the pending motion to dismiss. *See Dietz v. Bouldin*, 579 U.S. 40, 47 (2016).

On June 17, 2022, Lane and Five Star Trucking, LLC ("Defendant" or "Five Star") entered into a written trucking subcontract (the "Subcontract," *see* Doc. 10-1)[2] in connection with the levee project. The Subcontract required Five Star to furnish maintained and manned vehicles for the hauling and trucking operations Lane requested. (*Id.* ¶ 4.) Importantly, the Subcontract also contained an indemnification clause, which provides:

> All work and services covered by this [Subcontract] shall be at the risk of [Five Star] alone. To the fullest extent permitted by law, [Five Star] agrees to defend, indemnify and hold harmless [Lane] and its agents and employees from and against any and all allegations, losses, actions, proceedings, liabilities, claims, judgments, demands, and any other loss, damage or expense, including the obligations of [Lane] on account of any similar agreement [Lane] has . . ., and including Claims arising from injuries or death of persons ([Five Star's] employees included), damage to property, and [Five Star's] failure to comply with any of its obligations under this [Subcontract], arising directly or indirectly out of its work or services or obligations herein undertaken or out of the operations or services conducted by [Five Star] and its subcontractors, truckers, and suppliers, regardless of any act or omission on the part of [Lane] or its agents or employees, save and except only Claims arising through the sole negligence or sole willful misconduct of [Lane], and will make good to and reimburse [Lane] for any expenditures, including reasonable attorney's fees, consultant's fees, costs, fines, penalties, corrective measures and any other reasonable expenses [Lane] may incur by reason of such Claims. [Five Star's] obligations under this paragraph survive the termination of this [Subcontract]. If requested by [Lane], [Five Star] will defend any such Claims at the sole cost and expense of [Five Star] and [Lane] shall have choice of counsel.

(*Id.* ¶ 5 (hereinafter "Paragraph 5" or the "indemnification provision").) As the levee project was ongoing, Five Star subcontracted with Long Haul Trucking—a trucking company owned and operated by Robert Long—to perform work. (Doc. 26 ¶ 26.) Mr. Long and his employees

[2] "[N]otwithstanding the usual rule that a court should consider no evidence beyond the pleadings on a Rule 12(b)(6) motion to dismiss, the district court may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity." *Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007) (internal quotations omitted)). Here, the Subcontract (Doc. 10-1) is the contract for which Lane's breach of contract claims are premised and its authenticity is not disputed by Five Star. (Doc. 10 at 3.) Therefore, the court will consider the Subcontract without transforming the motion to one for summary judgment. *Lowe v. Town of Fairland*, 143 F.3d 1378, 1381 (10th Cir. 1998) ("[C]ourts have broad discretion in determining whether or not to accept materials beyond the pleadings."). Further, the Subcontract is governed by Kansas law. (Doc. 10-1 at 11.) *Neustrom v. Union Pac. R. Co.*, 156 F.3d 1057, 1062 (10th Cir. 1998), *as amended on denial of reh'g* (Nov. 30, 1998) ("Because the parties proceed on the assumption that Kansas substantive contract law applies, we apply that law without further analysis.").

delivered materials to the levee project site. On July 14, 2023, Mr. Long drove his dump truck to the project and a collision occurred between him and Lane's employee, Darrell Bell, at the levee project site. Mr. Long alleges he was injured in the collision which led him to filing suit against Lane on January 30, 2025. *See Long v. The Lane Const. Corp.*, Case No. 2:25-cv-02043 (the "*Long* lawsuit").[3] The parties to that action have since settled, a development that postdates the parties' briefing in this case. However, that development bears directly on the disposition of Count III, as explained in Section III.B below.

On May 5, 2025, as a result of the allegations underlying the *Long* lawsuit, Lane's insurer Liberty Mutual Fire Insurance Company, demanded defense and indemnification from Five Star for any liability arising from the *Long* lawsuit, and insurance coverage on Lane's behalf. (Docs. 26 ¶¶ 31–32; *see* 1-2.) Five Star refused. Consequently, on April 16, 2026, Lane filed the instant action concerning its rights and obligations under the Subcontract. Lane asserts five claims, each premised on a breach of the Subcontract: declaratory judgment ("Count I"); duty to defend ("Count II"); contractual indemnity ("Count III"); failure to procure or provide insurance ("Count IV"); and failure to satisfy safety and lower-tier obligations ("Count V"). (Doc. 26 ¶¶ 36–61.) Defendant now moves to dismiss the complaint.

## II. Standard

To withstand a motion to dismiss for failure to state a claim under Rule 12(b)(6), a complaint must contain enough allegations of fact to state a claim to relief that is plausible on its face. *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)). All well-pleaded facts and the reasonable inferences derived from

[3] The court takes judicial notice of the docket in that action as it concerns matters that bear directly upon the disposition of this case. *See Hodgson v. Farmington City*, No 16-4120, 675 F. App'x 838, 840–41 (10th Cir. Jan. 10, 2017). The court takes notice of the existence and disposition of the filings in that case, not of the truth of any disputed fact asserted in them. *See Tal v. Hogan*, 453 F.3d 1244, 1264 n.24 (10th Cir. 2006).

those facts are viewed in the light most favorable to Plaintiff. *Archuleta v. Wagner*, 523 F.3d 1278, 1283 (10th Cir. 2008). Conclusory allegations, however, have no bearing upon the court's consideration. *Shero v. City of Grove, Okla*., 510 F.3d 1196, 1200 (10th Cir. 2007).

## III. Analysis

Five Star moves to dismiss on four grounds: (1) the case violates Kansas's one-action rule; (2) the Subcontract's indemnification provision exempts Five Star because Lane was solely negligent; (3) the indemnification provision is void under K.S.A. § 16-121(b); and (4) the indemnification provision is unenforceable because its terms are impermissibly vague and unconscionable. (Doc. 10 at 5–16.) The court takes up the three arguments directed at the indemnification provision first, turns next to the one-action rule, and then addresses the counts that Five Star's motion did not adequately address. For the reasons that follow, the motion is granted as to Count III and denied in all other respects.

### A. The Subcontract's Indemnification Provision

The court begins with the three arguments that target the merits of the Subcontract's indemnification provision, Paragraph 5. Five Star contends that the provision's (1) sole-negligence carve-out exempts it from any indemnity obligation; (2) is void under K.S.A. § 16-121(b); and (3) is impermissibly vague and unconscionable. (Doc. 10 at 6–14.)

Five Star's first two arguments both attack the substance of the indemnification provision and are therefore addressed together. Five Star first argues that Lane was solely negligent in the *Long* lawsuit and that the provision's exception for claims arising through the "sole negligence" of Lane relieves Five Star of any indemnity obligation. (Docs. 10 at 6–8; 10-1 ¶ 5.) Second, Five Star argues that, if the provision reaches claims arising from Lane's own negligence, it is void and unenforceable under the Kansas anti-indemnity statute, K.S.A. § 16-121(b). (Doc. 10 at 8–11.)

In response, Lane asserts that whether it was negligent is a fact question at issue in the *Long* lawsuit[4] and, in the instant action, it does not seek indemnity for its own conduct, but rather for the alleged fault of Long—Five Star's subcontractor. (Doc. 15 at 10–12.) The court agrees with Lane, and neither argument supports dismissal.

The court begins with the sole negligence exception. The indemnification provision excepts from Five Star's obligation those claims "arising through the sole negligence or sole willful misconduct of [Lane]." (Doc. 10-1 ¶ 5.) By its plain terms, that exception is triggered only where Lane's negligence is the sole cause of a claim; it does not reach a claim arising in part from the conduct of Five Star or its subcontractors. Here, Lane seeks indemnification for Long's negligence to the extent it contributed to the underlying accident, not for its own. Whether Long's conduct contributed to the collision in the *Long* lawsuit or whether, as Five Star insists, Lane was solely responsible for the accident, is a disputed question of fact the court is not able to resolve at this stage. The only support Five Star offers is a pretrial stipulation in the *Long* lawsuit that "a collision occurred between Long and Lane['s] employee." (Doc. 10 at 6–7 (citing Doc. 26 ¶ 26(f)).) The court fails to see how a stipulation that a wreck occurred establishes that Lane was solely at fault for it. Accepting the complaint's allegations as true, the sole-negligence exception does not defeat Lane's claims at the pleading stage.

Next, Five Star appears to imply that the pronoun "its" in the "opening clause of Paragraph 5" means that Five Star's only indemnification obligations are to itself. (Doc. 10 at 7–8.) This reasoning is unpersuasive. First, the word "its" does not appear in the opening clause of Paragraph 5. Furthermore, to the extent Five Star is referring to the second sentence of Paragraph 5, the

---

[4] Since Lane filed its response brief, the *Long* lawsuit has settled. This development does not impact Lane's contention that its alleged negligence is a fact question not at issue in the instant action. However, because that lawsuit settled, there will be no jury determination of comparative fault in that case. The practical consequences of that development will be discussed in Section III.B below.

argument plainly fails. That provision says, "Hauler agrees to defend, indemnify, and hold harmless Contractor and *its* agents and employees . . . ." (Emphasis added.) The highlighted term "its" clearly applies to the Contractor (Lane), not the Hauler (Five Star). This is not debatable. Consistent therewith, a plain reading of the Subcontract's indemnification provision shows that it reaches claims arising out of the operations of Five Star's "subcontractors, truckers, and suppliers." (Doc. 10-1 ¶ 5.) It is undisputed that Long was subcontracted by Five Star. So, the court has no problem holding that the Subcontract's indemnification provision requires Five Star to indemnify someone besides itself; the alternative construction would seem to be ridiculous. Accordingly, Five Stars' arguments for dismissal on the grounds that the indemnification provision does not apply to it—whether because Lane was solely negligent or that the indemnification provision only requires Five Star to indemnify itself—are rejected.

That leaves Five Star's next contention that the indemnification provision is void and unenforceable under K.S.A. § 16-121(b). Resolving that issue requires the court to construe the provision, and in doing so the court applies the ordinary rules of contract interpretation. The court construes a contract "to give effect to the intent of the parties consistent with the plain meaning of the language used and considering the whole agreement." *Matter of Marriage of Blosser*, 488 P.3d 1291 (Table), 2021 WL 2493205, at *2 (Kan. Ct. App. 2021) (citing *Thoroughbred Assocs. v. Kansas City Royalty Co.*, 297 Kan. 1193, 1206, 308 P.3d 1238 (2013), and *Hefner v. Deutscher*, 58 Kan. App. 2d 58, Syl. ¶ 1, 464 P.3d 367 (2020)). "If the operative language is unambiguous, those words necessarily govern the rights and obligations of the contracting parties." *Id*. Further, contracts are presumed legal, and the burden rests on the party challenging the contract to prove that it is illegal. *Frazier v. Goudschaal*, 296 Kan. 730, 749, 295 P.3d 542 (2013). Lastly, it is "the duty of courts to sustain the legality of contracts in whole or in part when fairly entered into, if

reasonably possible to do so, rather than to seek loopholes and technical legal grounds for defeating their intended purpose." *Idbeis v. Wichita Surgical Specialists, P.A.*, 279 Kan. 755, 770, 112 P.3d 81 (2005). A provision is accordingly construed from its four corners rather than by isolating a single sentence. *Waste Connections of Kan., Inc. v. Ritchie Corp.*, 296 Kan. 943, 963, 298 P.3d 250 (2013).

As a threshold matter, Kansas' anti-indemnification statute governs this Subcontract. K.S.A. § 16-121(b) applies to indemnification provisions in "construction contracts," which the statute defines as agreements "for the design, construction, alteration, renovation, repair or maintenance of a building, structure, highway, road, bridge, water line . . . or other improvement to real property, including any moving . . ." K.S.A. § 16-121(a)(1). The Subcontract is an agreement under which Five Star furnished vehicles to perform the hauling and trucking operations Lane requested in constructing the levee project. (Docs. 26 ¶¶ 17; 10-1 ¶ 4.) The Subcontract therefore falls within that definition. Paragraph 5 is likewise an "indemnification provision" as the statute defines that term, because it requires Five Star to "indemnify" Lane "against liability for loss or damages." K.S.A. § 16-121(a)(6). Neither party contends otherwise.

Looking more closely at the provision, Paragraph 5 obligates Five Star to indemnify Lane for claims arising out of the operations of Five Star and its subcontractors "regardless of any act or omission on the part of [Lane] or its agents or employees." (Doc. 10-1 ¶ 5.) Read in isolation, that phrase would require Five Star to indemnify Lane no matter who was at fault, including where Lane's own negligence caused or contributed to the claim. And Five Star is correct that the statute is not limited to a promisee's sole negligence: by its terms, § 16-121(b) voids a provision requiring the promisor to indemnify the promisee for "the promisee's negligence or intentional acts or omissions," without qualification. If the analysis stopped there, the provision would clearly violate

the statute. Indeed, the Kansas Court of Appeals reached that conclusion as to very similar language in *Great Plains*, where the indemnitor was required to indemnify "regardless of the active or passive negligence or contribution by" the indemnitee. *Great Plains Roofing & Sheet Metal, Inc. v. K Bldg. Specialties, Inc.*, 62 Kan. App. 2d 204, 211 (2022).

But the analysis does not stop there. The provision in *Great Plains*, like Paragraph 5 here, was prefaced by what the court called a "safe harbor" clause—a promise to indemnify only "to the maximum extent allowed by applicable law." *Id*. That language, the court explained, allowed the indemnitor's liability "to shrink to fit applicable law." *Id*. at 213. Therefore, the court held that "[b]ecause Kansas law does not allow [promisor] to indemnify [promisee] for [promisee's] negligence, [promisor's] obligation is limited to indemnifying its own negligence." *Id*. at 213 (citing *St. Paul Surplus Lines Ins. Co. v. International Playtex, Inc.*, 245 Kan. 258, 274, 777 P.2d 1259 (1989) (holding that a safe harbor clause in a contract insuring punitive damages did not cover punitive damages because Kansas law prohibited such insurance)). The court concluded that "K.S.A. [§] 16-121(b) does not render the indemnification provision void and unenforceable. Instead, the language of the contract caps [promisor's] liability at the statutory limit. [Promisor's] liability can only extend as far as its own share of negligence in the underlying tort." *Id*.

Here, Paragraph 5 opens with the same type of safe harbor provision, demanding a similar result. Five Star agreed to indemnify Lane "[t]o the fullest extent permitted by law." (Doc. 10-1 ¶ 5.) Five Star's indemnity obligation, then, shrinks to fit Kansas law. Because K.S.A. § 16-121(b) does not permit Five Star to indemnify Lane for Lane's negligence, Five Star's obligation is limited to indemnifying claims arising out of the acts and omissions of Five Star and its subcontractors in performing the levee project work. The statute therefore does not render Paragraph 5 void and unenforceable. It instead caps Five Star's liability at the statutory limit, and

that limit extends no further than Five Star's own share of fault in the underlying occurrence. *See Great Plains*, 62 Kan. App. 2d at 213.

That construction also resolves the question of whether the sole negligence exception renders the provision void. Five Star argues that the exception is narrower than the statute, because § 16-121(b) reaches a promisee's negligence generally rather than only its sole negligence, and that a sole-negligence exception cannot salvage a provision that still requires indemnity for the promisee's concurrent negligence. (Doc. 10 at 10.) Five Star reads the statute correctly, but the argument does not carry the day, because it is the safe harbor rather than the provision's sole negligence exception that conforms Paragraph 5 to the statute. Whatever the sole negligence exception does or does not permit, the safe harbor independently limits Five Star's obligation to what Kansas law permits. The practical consequence is that Five Star cannot be required to indemnify Lane for Lane's own negligence at all—whether Lane is found solely negligent or only partially so.

Lane's response confirms the point. Lane represents that it does not seek indemnity in this action for its own conduct, but only for the alleged fault of Long—Five Star's subcontractor. (Docs. 26 ¶¶ 47–48, 53–58; 15 at 15.) The statute voids an indemnification provision to the extent it shifts the promisee's negligence onto the promisor; it says nothing about a claim for indemnity premised on the conduct of the promisor and its subcontractors. K.S.A. § 16-121(b). Because the indemnity Lane seeks is of the latter kind, § 16-121(b) is not implicated by the relief sought.

Five Star's effort to distinguish *Great Plains* is unavailing. It argues that, unlike the indemnitor there, "Five Star has no share of negligence in the underlying tort" because it "played no part in the collision between Long and the Lane employee." (Doc. 10 at 10.) Again, that is a factual assertion, and it conflicts with the complaint's allegations that the *Long* lawsuit arises at

least in part out of the operations of Five Star and its subcontractor. (Doc. 26 ¶¶ 38, 48.) The court cannot accept it on a motion to dismiss.[5] Accordingly, the Subcontract's indemnification provision is not void or unenforceable under K.S.A. § 16-121(b), and Five Star's motion to dismiss on that ground is denied.

Five Star's remaining theory is that the indemnification provision is unenforceable because it is impermissibly vague and unconscionable. (Doc. 10 at 11–14.) This argument fares no better. As to vagueness, it is true that an indemnity provision so indefinite that the parties' intent cannot be ascertained is unenforceable. *See Mohr v. State Bank of Stanley*, 770 P.2d 466, 480 (Kan. 1989) ("[W]here the purported contract is so vague and indefinite that the intentions of the parties cannot be ascertained, it is unenforceable." (citation omitted)). But here, the indemnification provision is a more or less standard indemnity clause that appears to be part of a multi-state contract that was drafted with the knowledge that it would apply to different projects across different jurisdictions. Certainly, that is no excuse for failing to familiarize oneself with a jurisdiction's applicable law. Nevertheless, the presence of a sole-negligence exemption along with a broad safe harbor clause does not render it impermissibly vague but instead, requires the provision "shrink to fit applicable law." *Great Plains*, 62 Kan. App. 2d at 213. *See* K.S.A. § 16-121(b). The indemnification provision's meaning is plainly ascertainable: "[Five Star] agrees to defend, indemnify and hold harmless [Lane] . . . against any and all allegations, losses, actions, proceedings, liabilities, claims, judgments, demands, and any other loss, damage or expense, . . . including Claims arising from injuries . . . arising . . . out of the operations or services conducted by [Five Star] and its subcontractors." (Doc. 10-1 ¶ 5.) This indemnification clause obligates Five Star to indemnify Lane for claims arising out of the work of Five Star and its subcontractors, and no further. Its

[5] Because the safe harbor preserves the indemnification provision, the court need not decide whether the insurance exception in K.S.A. § 16-121(d)(6) would independently apply. (Doc. 10 at 10–11.)

meaning is clearly ascertainable. *See Infinity Energy Res. v. St. Paul Fire & Marine Ins. Co.*, No. 12-2685-JTM, 2013 WL 3792899, at *6 (D. Kan. July 19, 2013) ("To be considered ambiguous, a written contract must contain provisions or language of doubtful or conflicting meaning, as gleaned from a natural and reasonable interpretation of its language.") (internal quotations omitted)). Just because a party to a contract disagrees about what a provision in it means does not render that provision impermissibly vague.

Nor is the provision unconscionable. Unconscionability is an affirmative defense, and dismissal under Rule 12(b)(6) on that basis is proper only where the defense appears on the face of the complaint. *See Fernandez v. Clean House, LLC*, 883 F.3d 1296, 1299 (10th Cir. 2018). It does not appear here. Under Kansas law, unconscionability "requires some element of deceptive bargaining conduct present as well as unequal bargaining power." *Holliday v. Bank of Am., N.A.*, 819 F. Supp. 3d 1255, 1272 (D. Kan. 2025) (quoting *Via Christi Reg'l Med. Ctr., Inc. v. Reed*, 314 P.3d 852, 868 (2013)). Five Star alleges only that the Subcontract is a standard form agreement offered by a large national contractor to a small Kansas company. (Doc. 10 at 13–14.) It does not allege any deceptive bargaining and its assertion that Lane is a national entity and Five Star a local one falls well short of the unequal bargaining power the doctrine requires. A form contract between two commercial entities, without more, is not unconscionable under Kansas law. As Lane observes, the Subcontract's indemnification provision was negotiated between commercial entities. (Doc. 15 at 14–15.) The provision is not unconscionable. In sum, none of Five Star's challenges to the indemnification provision supports dismissal. Paragraph 5 is enforceable. But as properly construed under Kansas law, it limits Five Star's obligation to Five Star's own share of fault in the underlying occurrence—a limitation with consequences the court takes up next.

**B. The One-Action Rule**

Because Five Star's indemnity obligation extends no further than its own share of fault in the underlying occurrence, it stands to reason that the extent of that obligation cannot be fixed without determining Five Star's share of fault. That brings the court to Five Star's first argument on this point: that Kansas's one-action rule bars this suit because Lane was a party to the *Long* lawsuit, could have brought Five Star into that action, and instead allowed the case to resolve without any determination of fault. (Docs. 10 at 4–6; 18 at 2–4.) Lane responds that its claims sound in contract and therefore require no fault comparison. (Doc. 15 at 6–10 & n.5.) Lane's second argument—that a determination of fault will occur in the *Long* lawsuit—is now moot, as the *Long* lawsuit settled, and no trial occurred. Accordingly, for the reasons that follow, the one-action rule bars Count III.

The one-action rule is a product of Kansas's comparative fault law. *See* K.S.A. § 60-258a. It requires litigants to "fully and finally litigate in a single action all causes of actions and claims for damages arising out of any act of negligence." *Mathis v. TG & Y*, 242 Kan. 789, 791 (Kan. 1988). From that premise Kansas courts derived the rule that, "[w]hen an injured party asserts a claim for negligence, all parties whose causal negligence contributed to the injury must be joined to the original action, with no distinction between tort claims and contract claims." *Great Plains*, 62 Kan. App. 2d at 205.

The one-action rule turns on what a claim requires rather than on what it is called. That is, "the relevant question is not whether an action derives from tort law or contract law. The relevant question is whether the fact-finder must compare fault. If so, fault must be compared in one action." *Great Plains*, 62 Kan. App. 2d at 225–26. In *Great Plains*, the court applied that principle to an express contractual indemnity claim, holding that "[w]hen a contract requires one party to indemnify another for its share of negligence, the underlying tort controls the party's liability. It

becomes impossible to determine the extent of the breaching party's contractual liability without also determining its liability in the negligence action. For this reason, the one-action rule applies to all cases comparing fault, whether the action is in tort or in contract." *Id.* at 222 (citing *Kennedy v. City of Sawyer*, 228 Kan. 439 (1980)); *accord id.* 62 Kan. App. 2d 204, Syl. ¶ 8. The court went on to hold that the one-action rule barred the indemnitee "from seeking to litigate comparative fault in a separate action, whether fault must be compared under tort law or to determine the extent of [the indemnitor's] contractual indemnity liability." *Id.* at 226.

That principal resolves Count III. In Section III.A, supra, the court explained that Paragraph 5's safe harbor provision caps Five Star's indemnity obligation at its own share of fault, and that Kansas law forbids Five Star from indemnifying Lane for Lane's own negligence. K.S.A. § 16-121(b). That construction carries a consequence Lane does not confront. To determine what Five Star owes under Paragraph 5, a factfinder must decide what share of the fault for the July 14, 2023, collision is attributable to Five Star and its subcontractors, and what share belongs to Lane and its employee. That is precisely the comparison of fault that the one-action rule requires be made once and only once.

The problem now is that no such comparison can be made in the *Long* lawsuit. Lane was the defendant in that action. It could have impleaded Five Star as a third-party defendant, or it could have sought a comparison of the fault of Five Star and its subcontractors without joining them at all. *See Brown v. Keill*, 224 Kan. 195, 207, 580 P.2d 867, 876 (1978) (holding that the fault of all parties to the occurrence is determined "even though one or more parties cannot be joined formally as a litigant or be held legally responsible"). Lane did neither. It defended the *Long* lawsuit from January 2025 forward and then settled it. No factfinder compared fault. As in *Great Plains*, Lane has offered no reason it could not have brought its claims against Five Star in

the underlying action and, having settled instead, it may not use this action as the forum for comparing such fault. 62 Kan. App. 2d at 225. "Because [Lane] could have compared the fault of all tortfeasors in one action but chose not to, the one-action rule bars [it] from seeking to litigate comparative fault in a separate action, whether fault must be compared under tort law or to determine the extent of [Five Star's] contractual indemnity liability." *Id.* at 226.

Lane's primary argument in rebuttal is that "there will be a determination of the comparative fault of Long . . . in the original underlying action set for trial in July." (Doc. 15 at 7.) Of course now, that argument is moot as the *Long* lawsuit has settled and there will be no determination of fault. The share of fault that matters under Paragraph 5 is Five Star's, and Five Star was never a party to the *Long* lawsuit. Therefore, whatever opportunity existed to compare Long's fault is now gone. Nor does it matter, as Lane argues, that Long himself was a party to the *Long* lawsuit. Five Star was not, and "a person who is not made a party to a comparative negligence case is not bound by the judgment" in it. *Mathis*, 242 Kan. at 791 (citing *Eurich v. Alkire*, 224 Kan. 236, 238, 579 P.2d 1207 (1978)). Whatever fault might have been allocated to Long in the *Long* lawsuit would not have bound Five Star, and so would not have supplied the apportionment on which Lane's indemnity claim depends. Long's presence in the first suit was no substitute for Five Star's.

Because the court applies the one-action rule to dismiss a claim, it must resolve the dispute the parties raise over whether the rule operates in federal court. Lane contends the rule is procedural and is displaced by Federal Rule of Civil Procedure 14, which makes third-party practice permissive rather than compulsory. (Doc. 15 at 8–10.) Five Star responds that the rule vindicates a substantive right—namely, the right of defendants to have the fault of all participants in an occurrence measured in one action as codified in Kansas's comparative fault law. *See* K.S.A.

§ 60-258a. (Doc. 18 at 2–4.) Five Star is correct. A Federal Rule displaces state law only where the two answer the same question. *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398–99 (2010). Rule 14 answers whether a defending party may implead a third party in a pending federal action. *See* Fed. R. Civ. P. 14. The one-action rule answers a very different question—whether a party who obtained no comparison of fault in the first action may later bring a separate claim that requires one—and it answers that question as a matter of Kansas substantive law. *See Hefley v. Textron, Inc.*, 713 F.2d 1487, 1496–97 (10th Cir. 1983) ("In no event will [defendant] be liable for more than its proportionate share of fault. That is the substantive right the federal courts must protect.); *Baird v. Phillips Petroleum Co.*, 535 F. Supp. 1371, 1378 (D. Kan. 1982) ("K.S.A. 60-258a gives a defendant in a tort action a substantive right to have all negligence compared in a single action, but joinder has never been held to be a prerequisite for this comparison."). Kansas law never required Lane to implead Five Star under Rule 14, only that fault be compared in the single action, which Lane could have done and did not.

Finally, the court's analysis and holding on this point are confined to Count III. The one-action rule reaches a claim only to the extent its resolution requires a comparison of fault. *Great Plains*, 62 Kan. App. 2d at 225–26.

**C. Counts II, IV, and V**

That leaves Counts II, IV, and V.[6] Lane observes that Five Star's motion is directed almost entirely at the indemnification provision, and that Lane's other claims rest on different obligations under the Subcontract. (Doc. 15 at 4 nn.3–4, 11 n.8.) The court agrees. Three of Five Star's four primary contentions concern Paragraph 5's indemnification language, and the fourth reaches only claims requiring a comparison of fault. Five Star's assertion that "[a]ll of Lane's claims depend

[6] Count I seeks a declaration of the parties' respective rights and duties under the Subcontract. The court notes that its dismissal of Count III necessarily limits the declaratory relief that may be available with respect to that claim.

on [Paragraph 5], and all must therefore be dismissed" is a conclusion rather than an argument, and it is not correct. (Doc. 10 at 11.)

Count II alleges breach of the duty to defend. Paragraph 5 states that duty separately from the duty to indemnify: Five Star agreed that "[i]f requested by [Lane], [Five Star] will defend any such Claims at the sole cost and expense of [Five Star]." (Doc. 10-1 ¶ 5.) Lane alleges that it tendered the defense of the *Long* lawsuit and that Five Star refused. (Doc. 26 ¶¶ 31–32.) Five Star does not argue that the claims asserted against Lane in the *Long* lawsuit fall outside the scope of that promise, does not address when a contractual duty to defend arises, nor explains why that duty should rise or fall with the duty to indemnify. The court will not construct arguments on Five Star's behalf. Count IV alleges that Five Star failed to procure insurance and to name Lane as an additional insured, as Paragraph 3 required. Five Star's own brief describes Paragraph 3 as "requir[ing] Five Star to maintain commercial general liability, automobile liability, and umbrella/excess liability coverage and to name Lane as an additional insured." (Doc. 10 at 11.) Five Star advances no argument that Lane has failed to state a claim for breach of that requirement. Similarly, Count V alleges that Five Star breached obligations concerning safety compliance. (Doc. 26 ¶¶ 56–61.) Five Star's only engagement with those allegations is its assertion that "Lane has not alleged that any breach of those obligations caused Bell to strike Long's truck." (Doc. 10 at 7.) That is an insufficiently developed challenge to Count V. The party moving to dismiss bears the burden of showing that the complaint fails to state a claim, and this court does not develop arguments a party has left undeveloped. *See United States v. Wooten*, 377 F.3d 1134, 1145 (10th Cir. 2004). Because Five Star has offered no articulable argument directed at Counts II, IV, and V, its motion is denied as to those counts. Nothing in this order forecloses a properly supported challenge to them at a later stage.

## IV. Conclusion

THEREFORE, Defendant's motion to dismiss (Doc. 10) is GRANTED IN PART and DENIED IN PART. The motion is GRANTED as to Count III. The motion is DENIED as to Counts II, IV, and V. Regarding Count I, the court does not decide the ultimate scope of Five Star's obligations under Paragraph 5 beyond concluding that, by force of the safe-harbor clause, those obligations do not extend to Lane's own negligence.

IT IS SO ORDERED. Dated this 31st day of August, 2026.

s/ John W. Broomes
JOHN W. BROOMES
CHIEF UNITED STATES DISTRICT JUDGE